# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **Wyatt Bury, LLC, Ballpark Investments LLC d/b/a Hope and Healing Counseling, Wyatt Bury, Pamela Eisenreich,** and **State of Missouri** *ex rel.* **Missouri Attorney General Andrew Bailey,** | Case No. 4:25-cv-00084-JAM |
| Plaintiffs, | **Plaintiffs' Suggestions in Opposition to Defendants' Motion to Stay** |
| v. | |
| **City of Kansas City, Missouri** and **Jackson County, Missouri,** | |
| Defendants. | |

# TABLE OF CONTENTS

Table of Authorities ............................................................................................... ii

Introduction .......................................................................................................... 1

Argument .............................................................................................................. 2

I.   A stay will harm the Counselors and Missouri citizens by forcing them to chill their speech for over a year. ................................................................. 2

II.  A stay has no benefits and relieves the City and County of no burden. ........... 6

III. Jurisdictional discovery is unnecessary. ......................................................... 10

Conclusion ........................................................................................................... 11

Certificate of Service .......................................................................................... 13

## Table of Authorities

**Cases**

*281 Care Comm. v. Arneson*,
  766 F.3d 774 (8th Cir. 2014) .............................................................................. 4

*303 Creative LLC v. Elenis*,
  385 F. Supp. 3d 1147 (D. Colo. 2019) ................................................................ 8

*303 Creative LLC v. Elenis*,
  725 F. Supp. 3d 1235 (D. Colo. 2024) ................................................................ 8

*303 Creative LLC v. Elenis*,
  No. 16-CV-2372, 2017 WL 4331065 (D. Colo. Sept. 1, 2017) ........................... 7

*AgGrow Oils, L.L.C. v. National Union Fire Insurance Company of Pittsburgh*,
  242 F.3d 777 (8th Cir. 2001) .............................................................................. 9

*Chiles v. Salazar*,
  No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025) .......................................... 1

*Cottrell v. Duke*,
  737 F.3d 1238 (8th Cir. 2013) ............................................................................ 2

*Fletcher v. City of Sugar Creek*,
  No. 4:20-CV-00030-RK, 2022 WL 1913075, at *2 (W.D. Mo. June 2, 2022) .................................................................................................................. 2

*In re PG&E Corporate Securities Litigation*,
  100 F.4th 1076 (9th Cir. 2024) ....................................................................... 4, 7

*Johnson v. Minneapolis Park & Recreation Board*,
  729 F.3d 1094 (8th Cir. 2013) ............................................................................ 5

*Lackey v. Stinnie*,
  145 S. Ct. 659 (2025) .......................................................................................... 9

*Landis v. North American Company*,
  299 U.S. 2485 (1936) .......................................................................................... 2

*Lockyer v. Mirant Corporation*,
  398 F.3d 1098 (9th Cir. 2005) ............................................................................ 6

*Marti v. Iberostar Hoteles y Apartamentos S.L.*,
  54 F.4th 641 (11th Cir. 2022) ............................................................................. 4

*Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Commission*,
    584 U.S. 617 (2018) ............................................................................................... 7

*Riazi v. Ally Financial, Inc.*,
    No. 4:17-CV-1705, 2017 WL 4269791, at \*4 (E.D. Mo. Sept. 26, 2017) ............ 4

*Smokey Alley Farm P'ship v. Monsanto Company*,
    No. 4:17-CV-2031, 2018 WL 278624, at \*4 (E.D. Mo. Jan. 3, 2018).............. 5, 8

*Sprint Communications, Inc. v. Jacobs*,
    571 U.S. 69 (2013 .................................................................................................. 2

*St. Louis Heart Center, Inc. v. Athenahealth, Inc.*,
    No. 4:15-CV-01215, 2015 WL 6777873, at \*5 (E.D. Mo. Nov. 4, 2015) ......... 4, 5

*Williams v. TGI Friday's Inc.*,
    No. 4:15-CV-1469, 2016 WL 1453032, at \*3 (E.D. Mo. Apr. 12, 2016) ............. 4

**<u>Statutes</u>**

Mo. Rev. Stat. § 347.039 ............................................................................................... 10

**<u>Other Authorities</u>**

Andrew Bailey, *Kansas City, Jackson County counseling censorship hurts
young people*, The Kansas City Star (Feb. 28, 2025), https://bit.ly/4cfSMl2 ............. 10

Brief in Opposition, *Chiles v. Salazar*, No. 24-539 (U.S. Jan. 6, 2025), 2025
WL 746313 ..................................................................................................................... 7

Hope and Healing Counseling, https://www.hopeandhealingcounselingkc.com/ ...... 10

Petition for Writ of Certiorari, *Chiles v. Salazar*, No. 24-539 (U.S. Nov. 8,
2024) ............................................................................................................................... 8

Press Release, *Jackson County Executive Frank White, Jr., Responds to
Lawsuit Challenging Conversion Therapy Ban* (Feb. 11, 2005),
https://www.documentcloud.org/documents/25520773-press-release-
2/?mode=document&embed=1#document/p1 ............................................................ 5

United States Courts, *Supreme Court Procedures*,
https://www.uscourts.gov/about-federal-courts/educational-resources/about-
educational-outreach/activity-resources/supreme-court-procedures .......................... 4

## Introduction

On the day they filed this case, Wyatt Bury, Pamela Eisenreich, and the State of Missouri moved for a preliminary injunction enjoining Kansas City's and Jackson County's unconstitutional ordinances because they need relief right now. The Counselors—and other similarly-situated Missouri citizens—cannot speak openly with their clients about their clients' struggles with gender identity and sexual orientation. And their clients cannot receive the counseling they seek. But the City and County opposed the preliminary-injunction request, filed an expert report, and moved to dismiss the case for lack of standing. The City and County have now asked to stay this case pending the Supreme Court's decision in *Chiles v. Salazar*, No. 24-539, 2025 WL 746313 (U.S. Mar. 10, 2025)—but requested they be able to take discovery not subject to the stay.

This Court should deny their requests. Stay requests are rarely granted because they disrupt the normal course of litigation. This one-sided stay request is especially unusual—it would delay resolution by over a year, as the City and County admit. Meanwhile, the Counselors and other Missouri counselors will suffer ongoing, irreparable harm by being forced to chill their speech on sensitive topics during counseling sessions. And this chill affects their clients—including minors— by depriving them of counseling they hope to receive. On the other hand, the parties agree that *Chiles* will not decide all of the constitutional claims against the Counseling Ordinances, the constitutional claims against the City's Public Accommodation Ordinance, or the City and County's motion to dismiss. So this Court will have to decide these issues regardless of the outcome in *Chiles*.

Finally, jurisdictional discovery is unnecessary because Bury and Eisenreich filed a verified complaint alleging that they provide counseling within the City's and County's boundaries. This Court should deny the City's and County's stay and discovery requests and allow this case to proceed along its normal route.

## Argument

It is "rare" for courts to stay proceedings pending the outcome of a distinct case. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Where jurisdiction exists, federal courts have a "virtually unflagging" obligation "to hear and decide a case." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). As the parties seeking the stay, the City and County "heavily" bear the burden to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255–56. Factors that contribute to that analysis include the plaintiffs' interests and prejudice caused by the delay; the defendants' burden in moving forward; the court's duty to manage judicial resources wisely; non-parties' interests in the litigation; and the public's interest in the litigation. *See Fletcher v. City of Sugar Creek*, No. 4:20-CV-00030-RK, 2022 WL 1913075, at *2 (W.D. Mo. June 2, 2022); *accord Cottrell v. Duke*, 737 F.3d 1238, 1249 (8th Cir. 2013) (stay must "properly balance[] the rights of the parties and serve[] the interests of judicial economy").

The City and County do not mention most of these factors—even though they have the heavy burden to justify a stay. In any event, no factor warrants a stay or discovery. (I) A stay harms the Counselors and Missouri citizens by forcing them to keep chilling their speech. (II) The City and County will not be unduly burdened by a denial of the stay, a stay would not conserve judicial resources, and the public has an interest in this case. And (III) jurisdictional discovery is not necessary here.

**I.    A stay will harm the Counselors and Missouri citizens by forcing them to chill their speech for over a year.**

Bury and Eisenreich are licensed counselors who counsel clients consistent with their religious beliefs about human identity sexuality. Verified Compl. (VC) ¶¶ 41–51, ECF No. 1. To that end, they want to take several steps. *First*, they want to offer only counseling about marriage, sexuality, and gender identity consistent with their faith. *Id.* They would and sometimes do counsel clients to identify consistently

with their sex and encourage them to pursue sexual activities and desires in the context of marriage between one man and one woman, even if that means helping their clients change or alter their perceived identity or sexual attractions. *Id.* at ¶¶ 162–238. *Second*, they want to be open about those beliefs by publishing them on their websites and other written materials—including their beliefs about pronoun usage, same-sex marriage, and other topics. *Id.* at ¶¶ 304–12; VC Exs. 5–6. *Third*, they want to ask prospective clients questions to learn whether the requested counseling would violate their beliefs. Id. at ¶¶ 294–95, 313, 322.

But the Counseling Ordinances and the City's Public Accommodation Ordinance prohibit these activities. Pls.' Suggestions in Supp. of Prelim. Inj. Mot. 10–11, ECF No. 10. To avoid violating these ordinances, the Counselors must chill their speech. VC ¶¶ 162–238. For example, Eisenreich has avoided discussing gender-identity related issues during counseling sessions and even declined to see clients because of the ordinances. *Id.* at ¶¶ 193–212. Bury has also declined to take on clients and referred some requests for counseling to others. *Id.* at ¶¶ 217–227. And both counselors are refraining from posting statements on their practices' website explaining their religious reasons for why they only provide counseling services consistent with their religious beliefs. *Id.* at ¶¶ 304–06. Missouri and its people deserve the candor of such disclosures which these therapists wish to and are constitutionally entitled to make but which the challenged Ordinances prohibit.

The Counselors are reasonably fearful—the ordinances carry steep financial penalties while the Public Accommodation Ordinance carries *criminal* penalties. *Id.* ¶¶ 134, 276. They also face a credible threat of enforcement. The City and County agree that the Counseling Ordinances prohibit the Counselors' "*exact*[]" type of speech and the City labels the Counselors' counseling as "discriminatory practices" under the Public Accommodation Ordinance. Defs.' Suggestions Opp'n Pls.' Mot. Prelim. Inj. and Suggestions Supp. Mot. Dismiss (Opp'n) 2, 24, ECF No. 20. And the

City and County proclaim a "compelling interest" in enforcing the ordinances. *Id.* at 7, 9, 30. A "compelling interest" is an "interest of the highest order," an "overriding state interest," or an "unusually important interest." *281 Care Comm. v. Arneson*, 766 F.3d 774, 785 (8th Cir. 2014) (cleaned up).

This background alone justifies denying the requested stay. The City and County recognize that *Chiles* likely will not be decided until "June 2026"—*fifteen* months from now. Mot. to Stay ¶ 6, ECF No. 17.[1] Prolonging this case means the Counselors and similarly-situated Missouri citizens will have to avoid more conversations and lose more clients or expose themselves to ruinous fees and even jail time. What's more, the Counselors' prospective minor clients and the minors' parents will lose out on the opportunity to receive counseling they desire. And after a ruling in *Chiles*, the Counselors and Missouri would likely have to restart the preliminary-injunction process all over again. That means a stay will deny the Counselors and Missouri relief for much more than fifteen months.

A stay "for over a year" is "a lengthy delay." *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641, 648 (11th Cir. 2022). Courts frown upon stays this long because they inherently conflict with the parties' need for resolution. *Compare In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1084 (9th Cir. 2024) (describing 18 months as "the benchmark" for a delay that "places litigants effectively out of court") *and Riazi v. Ally Fin., Inc.*, No. 4:17-CV-1705, 2017 WL 4269791, at *4 (E.D. Mo. Sept. 26, 2017) (denying stay because pending court of appeals decision was unlikely to "issue quickly"), *with Williams v. TGI Friday's Inc.*, No. 4:15-CV-1469, 2016 WL 1453032, at *3 (E.D. Mo. Apr. 12, 2016) (granting "stay of a few months" pending Supreme Court decision); *St. Louis Heart Ctr., Inc. v. Athenahealth, Inc.*,

---

[1] United States Courts, *Supreme Court Procedures*, https://www.uscourts.gov/about-federal-courts/educational-resources/about-educational-outreach/activity-resources/supreme-court-procedures (explaining opinions "are, typically, handed down by the last day of the Court's term … in late June/early July").

No. 4:15-CV-01215, 2015 WL 6777873, at *5 (E.D. Mo. Nov. 4, 2015) (granting "finite and moderate" stay where Court had "already heard oral argument").

While "[t]he Court has an interest in securing the just, speedy, and inexpensive determination of every action," *Smokey Alley Farm P'ship v. Monsanto Co.*, No. 4:17-CV-2031, 2018 WL 278624, at *4 (E.D. Mo. Jan. 3, 2018), the First Amendment freedoms at stake would make a delay even more pernicious. The "loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013) (cleaned up). And besides chilling the speech of many counselors, the challenged laws also burden the Counselors' current and future clients by depriving them of the benefit of their counseling. VC ¶¶ 233–38.

To make matters worse, the City and County never dispute that the Counselors are chilling their speech or offer to stay enforcement of the law pending a decision in *Chiles*. The City and County agree that "the Laws … prohibit Plaintiffs from [saying and] doing what they want to [say and] do." Opp'n 24. The City and County filed a full-throated defense of their ordinances, retained an expert, called the Counselors' practice "discriminatory," and bemoaned the supposed (but wrong) harms brought on by the Counselors' practice. *See generally* Opp'n. And the day after this suit was filed, the County issued a press release affirming its "unwavering" commitment to its ordinance, promising to "defend [its] law banning the harmful practice of conversion therapy to the fullest extent of the law," calling the Counselors' practice "abuse," and deciding to "[l]ight the courthouse in rainbow colors" in opposition to the suit.[2]

In short, the City and County revealed their intent to maximally enforce their ordinances. And the Counselors refrain from speaking as a result. But it

---

[2] Press Release, *Jackson County Executive Frank White, Jr., Responds to Lawsuit Challenging Conversion Therapy Ban* (Feb. 11, 2005), https://bit.ly/4iZnL7x.

makes little sense for the Counselors to curtail their constitutional rights without requiring Defendants to show the constitutionality of their laws. A lopsided stay like this disproportionately burdens the Counselors and similarly-situated Missouri citizens. They need relief right now—not over fifteen-plus-months into the future.

## II. A stay has no benefits and relieves the City and County of no burden.

The (i) absence of burden on the City and County; (ii) judicial efficiency; and (iii) the public interest counsel against a stay.

**Burden.** Start with the City's and County's burdens. Those governments never identify—much less, provide evidence of—any burden or hardship from moving forward now. It just requires them to defend the constitutionality of their ordinances—the normal course of affairs in any 42 U.S.C. § 1983 lawsuit. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *Riazi*, 2017 WL 4269791, at *4 (same). If anything, given the City's and County's alleged "compelling interest" in enforcing their ordinances, one would expect them to desire to resolve this case as soon as possible to ensure they can enforce the laws as written with no First Amendment exception.

Indeed, the City's and County's actions speak louder than their motion-to-stay filing. They have retained an expert who filed a report. They request discovery. They never offered to stay enforcement of the ordinances against the Counselors and similar Missouri citizens despite those individuals' credible and ongoing threat of prosecution. And the County promised to defend its laws to the utmost and even lit up its courthouse to oppose this suit. *See supra* n.2. These aggressive litigation tactics and publicity campaigns reveal the City's and the County's true desire to resolve this case quickly and decisively.

**Judicial efficiency.** Next comes judicial efficiency—the City and County's main appeal for a stay. Mot. to Stay ¶ 7. But "judicial efficiency standing alone is not necessarily a sufficient ground to stay proceedings." *In re PG&E*, 100 F.4th at 1085 (cleaned up). This argument fails here for at least three reasons.

*First*, *Chiles* may not control the Free Speech Clause issue in this case. The City and County acknowledge this. They say "[r]egardless of what happens" in *Chiles*, "this case should be dismissed and the preliminary injunction should be denied." Opp'n 1. Besides the City's and County's arguments, other reasons might pop up. For example, the Supreme Court could decline to reach the merits by dismissing the petition for lack of standing. *See* Br. in Opp'n 33, *Chiles v. Salazar*, No. 24-539 (U.S. Jan. 6, 2025), 2025 WL 746313 ("Colorado has maintained from this litigation's outset [that] Petitioner lacks standing[.]"). Or the Court could issue a narrow opinion. In fact, something similar occurred during the litigation of *303 Creative LLC v. Elenis*.

There, a website designer challenged Colorado's public-accommodations law on First Amendment grounds because it forced her to design websites promoting a view of marriage that violated her religious beliefs. *See 303 Creative LLC v. Elenis*, No. 16-CV-2372, 2017 WL 4331065 (D. Colo. Sept. 1, 2017). The designer filed the case in 2016. The parties briefed summary judgment by September 2017. *Id.* at *1. But in June 2017, the Supreme Court granted certiorari in *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Commission* to decide whether Colorado could apply its public-accommodations law to force a Colorado cake artist to create custom wedding cakes celebrating same-sex marriage. *Id.* at *2. The district court stayed *303 Creative*, believing that *Masterpiece* was "likely" to "guide determination of or eliminate the need for resolution of the issues in this case." *Id.* at *6. The Supreme Court decided *Masterpiece* in June 2018, one full year after it granted certiorari. 584 U.S. 617 (2018). But *Masterpiece* did not resolve any issue in *303 Creative*. So the

district court was in the same position as before. The district court then issued a ruling in 2019, *two years* after the initial stay order. *See 303 Creative LLC v. Elenis*, 385 F. Supp. 3d 1147 (D. Colo. 2019). Final judgment in *303 Creative* only came about in 2024 after *another* Supreme Court appeal—eight years after the designer filed the case and seven years after the district court stayed the case. *Compare id. with 303 Creative LLC v. Elenis*, 725 F. Supp. 3d 1235 (D. Colo. 2024).

The history is long, but the recap is short. Staying *303 Creative* to wait for *Masterpiece* provided no appreciable benefit, even though both cases involved *the exact same law* and presented similar issues. But *Chiles* and this case involve *different laws* and the Counselors and Missouri bring *different or other* claims than the claim at issue in *Chiles*. Any argument for a stay based on future Supreme Court decisions is speculative here and could end up delaying justice without benefiting anyone.

*Second*, *Chiles* cannot resolve *every* claim in this case. For example, the Counselors and Missouri on behalf of its citizens assert free-exercise and due process claims, while *Chiles* deals only with free-speech claims. *Compare* VC ¶¶ 362–400, *with* Pet. Writ Cert. i, *Chiles*, No. 24-539 (U.S. Nov. 8, 2024). So *Chiles* cannot resolve those claims. Plus, the Counselors and Missouri challenge the City's Public Accommodation Ordinance. This rule independently chills and threatens their First Amendment rights. *See* VC ¶¶ 277–323. *Chiles* will not address this type of law at all; it is not at issue there. So a stay here would delay resolution of claims regarding the Public Accommodation Ordinance that *Chiles* cannot resolve.

What's more, the City and County have filed a motion to dismiss claiming the Counselors and Missouri lack standing. This motion will not be answered or mooted when *Chiles* is decided. *See Smokey Alley Farm P'ship*, 2018 WL 278624, at *4 ("Whether the issues in the motion to dismiss are briefed in [another case], or before this Court, they still have to be briefed."). A stay will only deny much-needed clarity

to the parties on jurisdictional issues while also denying relief to many counselors and their clients who are suffering.

*Third*, the nature of a preliminary injunction is just that—preliminary and "transient." *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025). A ruling will "not conclusively resolve [the] legal disputes." *Id.* Nor would a ruling risk "incongruent results" of the type that normally favor a stay. *Contra* Mot. to Stay ¶ 7. *See*, *e.g.*, *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001) (explaining "risk of inconsistent rulings" in proceedings involving related claims and overlapping parties). Waiting for Supreme Court guidance is like waiting for a fuller record after discovery—both can be inherently at odds with the purpose of a time-sensitive request. After all, this Court will most likely revisit its preliminary-injunction ruling during any summary judgment motions practice. And once *Chiles* is decided, the parties can always ask this Court to revisit or modify any interim order.

**Public interest.** The public interest favors denying the stay request. As the parties' briefing suggests, this case raises fundamentally important issues. There is an ongoing debate around the world about "how to best treat children who identify as a gender contrary to their sex or experience gender dysphoria (an incongruence between their gender and sex)." VC ¶¶ 98–124. The City and County have proclaimed a "compelling interest" in enforcing their view of how to treat those children, a view which is at odds with both the interests of Missouri and of the Counselors. The City's and County's stay request contradicts their asserted interest—an interest cannot be compelling if a government is willing to table it for at least fifteen months.

The case has also garnered interest from the Kansas City Star.[3] And PROMO—"Missouri's LGBTQ+ public policy and advocacy organization"—has filed an amicus brief because of its "strong interest in this case because the population it serves—including Kansas City and Jackson County's LGBTQ+ youth and their parents." PROMO Mot. 1, ECF No. 25. PROMO recognizes the "complex and multi-faceted questions" presented here and filed dozens of pages from reports. *Id.* at 5. The public benefits from clarity provided by this Court's timely ruling in this case.

## III. Jurisdictional discovery is unnecessary.

The City and County ask for jurisdictional discovery. Mot. to Stay ¶ 9–10. But jurisdiction is easy to establish.[4] The Counselors' verified complaint states that they both maintain their practices in Kansas City and that Bury also maintains a practice in Jackson County. VC ¶¶ 35–36, 135. Eisenreich's Kansas City practice is publicly listed on her website too.[5]

Even so, the City and County point to the Counselors' articles of organization to contest their location. But the City and County never explain why this is relevant. Missouri law allows LLCs to list the "physical business *or* residence address of each organizer." Mo. Rev. Stat. § 347.039. And it allows the principal place of business to be left blank. *E.g.*, Exs. F, G to Mot. to Stay, Doc. 17–6, 17–7. The Counselors' articles of organization in no way contradict their complaint.

Nor do the City or County explain why locations in articles of organization matter to enforce the ordinances. Surely, what matters is the location of the

---

[3] Andrew Bailey, *Kansas City, Jackson County counseling censorship hurts young people*, The Kansas City Star (Feb. 28, 2025), https://bit.ly/4cfSMl2.

[4] The City and County can request further information on this topic during regular discovery if they somehow doubt the evidence presented to date, but jurisdiction is too straightforward to justify delaying preliminary relief for this fishing expedition.

[5] Hope and Healing Counseling, https://www.hopeandhealingcounselingkc.com/ (last visited Apr. 7, 2025).

practice—i.e., where the Counselors meet with clients—not the location of incorporation or organization. Otherwise, any provider or business could flout the City's and County's ordinances by incorporating or organizing west of State Line Road and then do business in the City or County.

Although this discovery is unnecessary, if the Court agrees with the City's and County's request for discovery, this becomes one more reason why a stay is inappropriate. Granting discovery to one party without allowing it by the other would be manifestly unfair, particularly where, as here, the State and Counselor's constitutional interests are harmed every day these Ordinances remain in effect. If the Court is inclined to grant the City's and County's request for jurisdictional discovery, the Counselors and Missouri request reciprocal discovery to rebut the motion to dismiss, including discovery into how the City and County interpret and enforce their ordinances.

## Conclusion

This Court should deny the request to stay this case for over fifteen months based on at-best uncertain benefits and deny the request for jurisdictional discovery because the relevant facts are already in the record.

Respectfully submitted this 7th day of April, 2025.

By: *s/Peter F. Donahue, Sr.*
ANDREW BAILEY
MISSOURI ATTORNEY GENERAL

Joshua M. Divine, #69875MO
   Solicitor General
Maria A. Lanahan, #65956MO
   Deputy Solicitor General
Peter F. Donohue, Sr., #75835MO
   Assistant Attorney General
Office of the Missouri Attorney General
207 West High Street
Jefferson City, MO 65101
(573) 751-8870
(573) 751-0774 Fax
Josh.Divine@ago.mo.gov
Maria.Lanahan@ago.mo.gov
Peter.Donohue@ago.mo.gov

By: *s/Bryan D. Neihart*

Michael K. Whitehead
Missouri Bar No. 24997
WHITEHEAD LAW FIRM, LLC
229 S.E. Douglas Street, Suite 210
Lee's Summit, Missouri 64063
(816) 210-4449
(816) 875-3291 Fax
Mike@TheWhiteheadFirm.com

Law Offices of Jonathan R. Whitehead, LLC
Jonathan R. Whitehead
Missouri Bar No. 56848
229 S.E. Douglas Street, Suite 210
Lee's Summit, Missouri 64063
(816) 398-8305
(816) 278-9131 Fax
Jon@WhiteheadLawLLC.com

Jonathan A. Scruggs*
Arizona Bar No. 030505
Henry W. Frampton, IV*
South Carolina Bar No. 75314
Bryan D. Neihart*
Arizona Bar No. 035937
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020
(480) 444-0028 Fax
jscruggs@ADFlegal.org
hframpton@ADFlegal.org
bneihart@ADFlegal.org

*\*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

**Certificate of Service**

    I hereby certify that on the 7th day of April, 2025, I electronically filed the foregoing document with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record who are registered owners of the ECF system.

s/ Bryan. D. Neihart
Bryan D. Neihart
*Attorney for Plaintiffs*
